# BUFFERD *v.* COMMISSIONER OF INTERNAL REVENUE

No. 91–7804.   Argued November 30, 1992—Decided January 25, 1993

WHITE, J., delivered the opinion for a unanimous Court.

*Stuart J. Filler,* by appointment of the Court, 506 U. S. 809, argued the cause for petitioner. With him on the briefs were *Toni Robinson* and *Mary Ferrari.*

*Kent L. Jones* argued the cause for respondent. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Bruton, Deputy Solicitor General Wallace, Ann B. Durney,* and *Janet Kay Jones.**

JUSTICE WHITE delivered the opinion of the Court.

On his 1979 income tax return, petitioner, a shareholder in a Subchapter S corporation, claimed as "pass-through" items portions of a deduction and a tax credit reported on the corporation's return. The question presented is whether the 3-year period in which the Internal Revenue Service is permitted to assess petitioner's tax liability runs from the filing date of the individual return or the corporate return. We conclude with the Tax Court and the Court of Appeals for the Second Circuit that the relevant date is that on which petitioner's return was filed.

I

Subchapter S of the Internal Revenue Code, 26 U. S. C. §§ 1361–1379, was enacted in 1958 to eliminate tax disadvantages that might dissuade small businesses from adopting

---

*Briefs of *amici curiae* urging reversal were filed for *Arthur H. Boelter* and *John J. White, Jr., pro se;* and for Charles T. Green et al. by *Robert I. White.*

the corporate form and to lessen the tax burden on such businesses. The statute accomplishes these goals by means of a pass-through system under which corporate income, losses, deductions, and credits are attributed to individual shareholders in a manner akin to the tax treatment of partnerships. See §§ 1366–1368.[1] In addition, since 1966, "S corporations" have been liable for certain capital gains and other taxes. 80 Stat. 111, 113; 26 U. S. C. §§ 1374, 1378.

Petitioner was treasurer and a shareholder of Compo Financial Services, Inc., an S corporation. On February 1, 1980, Compo filed a return for the tax year of December 26, 1978, to November 30, 1979, as required by § 6037(a) of the Code.[2] On that return, Compo reported a loss deduction and an investment tax credit arising from its partnership interest in a venture known as Printers Associates. Petitioner and his wife filed a joint return for 1979 on April 15, 1980.[3] Their return claimed a pro rata share of the deduction and credit reported by Compo pursuant to the pass-through provisions of Subchapter S.

Code § 6501(a) establishes a generally applicable statute of limitations providing that the Internal Revenue Service may assess tax deficiencies within a 3-year period from the date

---

[1] Subchapter S was substantially amended and recodified by the Subchapter S Revision Act of 1982, 96 Stat. 1669. The pass-through provisions in effect in the period relevant to this case, see 26 U. S. C. §§ 1373–1374 (1976 ed.), differ in certain respects from the present provisions. These differences do not affect the case.

[2] In relevant part, the statute reads:

"§ 6037. Return of S corporation

"(a) In general

"Every S corporation shall make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A [and other information]. Any return filed pursuant to this section shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation under section 6012."

[3] Phyllis Bufferd settled separately with the Commissioner and is not a party to this action.

a return is filed.[4] That limitations period may be extended by written agreement. § 6501(c)(4). In March 1983, before three years had passed from the time the joint return was filed, petitioner agreed to extend the period in which deficiencies arising from certain claims on the return could be assessed against him. No extension was obtained from Compo with respect to its return for the 1978–1979 tax year.

In 1987, the Commissioner determined that the loss deduction and credit reported by Compo were erroneous and sent a notice of deficiency to petitioner based on the loss deduction and credit that he had claimed on his return. In the Tax Court, petitioner contended that the Commissioner's claim was time barred because the disallowance was based on an error in Compo's return, for which the 3-year assessment period had lapsed. The Tax Court found for the Commissioner, relying on its decision in *Fehlhaber* v. *Commissioner*, 94 T. C. 863 (1990), aff'd, 954 F. 2d 653 (CA11 1992). See App. 61. The Court of Appeals for the Second Circuit affirmed, holding that, where a tax deficiency is assessed against the shareholder, the filing date of the shareholder's return is the relevant date for purposes of § 6501(a). 952 F. 2d 675 (1992). Because another Court of Appeals has a contrary view, we granted certiorari. 505 U. S. 1203 (1992).[5]

## II

Title 26 U. S. C. § 6501(a) states simply that "the amount of any tax imposed by this title shall be assessed within 3

---

[4] The statute reads in part:

"§ 6501. Limitations on assessment and collection

"(a) General rule

"Except as otherwise provided . . . the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ."

[5] *Kelley* v. *Commissioner*, 877 F. 2d 756 (CA9 1989), held that the filing date of the corporation's return controls. The Fifth and Eleventh Circuits have joined the Second Circuit in declining to follow *Kelley*. See *Green* v. *Commissioner*, 963 F. 2d 783 (CA5 1992); *Fehlhaber* v. *Commissioner*, 954 F. 2d 653 (CA11 1992).

years after the return was filed . . . ." The issue before us is whether "the" return is that of petitioner or that of the corporation which was the source of the loss and credit claimed on petitioner's return. Petitioner's position is that the Commissioner had three years from the date his return was filed to object to that return in any respect except the loss and credit items passed through to him by the corporation. To disallow those items, petitioner argues, the Commissioner must have acted within three years of the filing of the corporate return. Under this approach, "the" return referred to in § 6501(a) becomes two returns, and petitioner claims that there is adequate statutory basis for his submission. We have no doubt that the courts below properly concluded, as the Commissioner argued, that it is the filing of petitioner's return that triggers the running of the statutory period.

The Commissioner can only determine whether the taxpayer understated his tax obligation and should be assessed a deficiency after examining that taxpayer's return. Plainly, then, "the" return referred to in § 6501(a) is the return of the taxpayer against whom a deficiency is assessed. Here, the Commissioner sought to assess taxes which petitioner owed under the Code because his return had erroneously reported a loss and credit to which he was not entitled. The fact that the corporation's return erroneously asserted a loss and credit to be passed through to its shareholders is of no consequence. In this case, the errors on the corporate return did not and could not affect the tax liability of the corporation, and hence the Commissioner could only assess a deficiency against the stockholder-taxpayer whose return claimed the benefit of the errors. Under the plain language of § 6501(a), the Commissioner's time to make the assessment ran from the filing date of petitioner's return.[6]

---

[6] Even if it could credibly be argued that § 6501(a) is ambiguous because it does not expressly indicate how it is to be applied to S corporations and their stockholders, the Commissioner's construction of the section is

By contrast, the S corporation's return, which petitioner asserts triggers the beginning of the limitations period, is deficient precisely because it does not contain all of the information necessary to compute a shareholder's taxes. If the Internal Revenue Service were required to rely on that return, it would be forced to conduct its assessment on the basis of incomplete information:

> "While [the corporate return] may show petitioner's distributive share of losses, it does not indicate his adjusted basis in his corporate stock, which is information necessary to determine if the loss is deductible. Nor does it show petitioner's income, losses, deductions, and credits from other sources. Moreover, the information return of the S corporation does not relate to the same taxable period as petitioner's return . . . ." *Fehlhaber, supra,* at 869 (citation omitted).

As noted in analogous cases, tax returns that "lack the data necessary for the computation and assessment of deficiencies" generally should not be regarded as triggering the period of assessment. *Automobile Club of Mich.* v. *Commissioner,* 353 U. S. 180, 188 (1957) (citing *Commissioner* v. *Lane-Wells Co.,* 321 U. S. 219 (1944)).[7]

Petitioner asserts that § 6501(a) supports a contrary view when read in light of two related Code provisions pertaining

---

a reasonable one to say the least, and we should accept it absent convincing grounds for rejecting it. As noted in *Badaracco* v. *Commissioner,* 464 U. S. 386 (1984), "'limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.'" *Id.,* at 392 (quoting *Lucia* v. *United States,* 474 F. 2d 565, 570 (CA5 1973)).

[7] In these circumstances, the incompleteness of the corporate return provides a reason for doubting petitioner's understanding of the Code. We do not thereby suggest that, for cases in which a corporate return does supply all of the information necessary to process a shareholder's return, the mere fact of completeness is sufficient to establish the corporate return as "the" return of § 6501(a).

to S corporations. Section 6012(a)(2) requires both Sub-
chapter C and Subchapter S corporations to file income tax
returns.[8]   Section 6037(a) specifies the information that each
S corporation's return must provide (including "each share-
holder's pro rata share of each item of the corporation") and
further states that "[a]ny return filed pursuant to this section
shall, for purposes of [26 U. S. C. §§ 6501–6531], be treated as
a return filed by the corporation under section 6012."

We do not see that these provisions aid petitioner's cause.
Read together, §§ 6012(a)(2), 6037(a), and 6501(a) establish
only that each S corporation must file a tax return containing
certain information and that a Commissioner desiring to
make an assessment must act within three years of filing.
Nothing on the face of these provisions demonstrates that an
individual's income tax return is brought within the compass
of § 6037(a)'s reference to "any return" simply because a por-
tion of that return reports income and losses that have
passed through from the return of an S corporation.   If any-
thing, the phrase "[a]ny return filed pursuant to this sec-
tion," coupled with the fact that § 6037(a) is concerned with
describing the contents of the corporation's return, indicates
that the provision is *not* meant to determine when the as-
sessment period for a shareholder's individual tax return
begins.

Petitioner argues that this reading of the relevant provi-
sions runs afoul of the fact that, prior to 1966, S corporations
were not subject to taxation.   According to petitioner, no
purpose would have been served by establishing an assess-
ment period that applied to returns reporting corporate in-
come on which no taxes could be assessed but not to the

---

[8] Section 6012(a)(2) reads:

"§ 6012.   Persons required to make returns of income

"(a) General rule

   "Returns with respect to income taxes under subtitle A shall be made
by the following: . . .

   "(2) Every corporation subject to taxation under subtitle A . . . ."

returns of corporate stockholders. This argument fails because even in the period when the S corporation could not be taxed, examination of a corporation's return was necessary to determine if it could lay valid claim to Subchapter S status. Section 6037(a) thus originally functioned to set the starting date of the 3-year period within which that determination had to be made. See *United States* v. *Adams Building Co.*, 531 F. 2d 342, 343, n. 2 (CA6 1976); see also 952 F. 2d, at 677 (citing *Fehlhaber* v. *Commissioner*, 94 T. C. 863 (1990)).[9] Petitioner maintains that such a function would be superfluous because, if the election of S corporation status were found invalid, the corporation's return would "automatically be subject to the existing rules for C corporations." Brief for Petitioner 38. But this proposition is hardly self-evident, and petitioner cites no authority to support it. In the absence of § 6037(a), the Internal Revenue Service could claim that a corporation which files a return containing an erroneous election of Subchapter S status has failed to file any return, which would allow the Service to issue a notice of deficiency with respect to the return "at any time." See § 6501(c)(3); cf. *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304, 307 (1940); *Mason* v. *United States*, 801 F. Supp. 718, 721 (ND Ga. 1992).[10]

---

[9] Since S corporations are now subject to limited taxation, § 6037(a) serves the additional function of determining the assessment period for those taxes. See 952 F. 2d, at 678.

[10] Petitioner's reading of § 6037(a) is sufficiently lacking in textual support to obviate any need to examine legislative history. However, several courts have noted that the history of § 6037 contains evidence in support of the Commissioner's interpretation. See, *e. g., Green* v. *Commissioner*, 963 F. 2d, at 788–790; *Fehlhaber* v. *Commissioner*, 954 F. 2d, at 656–657. Section 6037(a) was introduced in the Technical Amendments Act of 1958, 72 Stat. 1606, 1656. The Senate Report explaining the provision states:

"Notwithstanding the fact that an electing small-business corporation is not subject to the tax imposed by chapter 1 of the 1954 Code, such corporation must make a return for each taxable year in accordance with new section 6037 . . . . Such return will be considered as a return filed under section 6012 for purposes of the provisions of chapter 66, relating to limita-

The Ninth Circuit's rejection in *Kelley* v. *Commissioner*, 877 F. 2d 756 (1989), of the view adopted by the Commissioner was prompted in part by a concern to avoid unfairly

tions. Thus, for example, the period of limitation on assessment and collection of any corporate tax found to be due upon a subsequent determination that the corporation was not entitled to the benefits of subchapter S, will run from the date of filing of the return required under the new section 6037." S. Rep. No. 1983, 85th Cong., 2d Sess., 226 (1958).

Although the passage would seem to support the Commissioner's view, petitioner, following the reasoning of the Ninth Circuit in *Kelley* v. *Commissioner*, 877 F. 2d 756 (1989), maintains that the phrase "for example" necessarily implies that the Senate also had in mind the present case. This implication is hardly necessary: The phrase just as easily could have been meant to avoid foreclosing other applications of § 6037(a) to corporate returns. Indeed, had "for example" been omitted, the Commissioner could now rely on this passage to argue that the period for assessing capital gains taxes under 26 U. S. C. § 1374 is not controlled by § 6037(a), but is instead governed by the filing date of a shareholder's return or some other triggering event. Likewise, in the absence of the phrase, it could be argued that, because the legislative history refers exclusively to a case in which *taxes* are assessed against a corporation that erroneously claims Subchapter S status, the period in which *penalties* may be assessed against the corporation should not be governed by § 6037(a).

The Commissioner claims additional support in the Senate Report accompanying the 1982 amendments to Subchapter S, which states in relevant part:

"Under present law, a taxpayer's individual tax liability is determined in proceedings between the Internal Revenue Service and the individual whose tax liability is in dispute. Thus, any issues involving the income or deductions of a subchapter S corporation are determined separately in . . . proceedings involving the individual shareholder whose tax liability is affected. Statutes of limitations apply at the individual level, based on the returns filed by the individual. The filing by the corporation of its return does not affect the statute of limitations applicable to the shareholders." S. Rep. No. 97–640, p. 25 (1982).

This passage is of little value to either side. While the views of a Congress engaged in the amendment of existing law as to the intent behind that law are "entitled to significant weight," *Seatrain Shipbuilding Corp.* v. *Shell Oil Co.*, 444 U. S. 572, 596 (1980), in this instance, the Report's account of "present law" may have been colored, if not wholly determined, by the Tax Court, which had already adopted the view espoused by the

burdening shareholders, who might find it difficult to obtain corporate records necessary to defend against a deficiency assessment based on an adjustment made to a corporation's return years after it was filed. The Fifth Circuit's opinion by Judge Goldberg in *Green* v. *Commissioner*, 963 F. 2d 783 (1992), neatly summarizes the appropriate response to that concern:

> "First, it is not unfamiliar in the world of tax to have 'an individual's income tax return . . . dependent on records maintained by another entity.' *Fehlhaber*, 954 F. 2d at 658 (citing partnership and trust taxation as examples). Second, the rule generally does not impose an undue burden on the corporation or the shareholder. . . . A shareholder can 'take the necessary steps to ensure that the corporation preserves the relevant records.' *Id.* Such protective steps simply do not constitute an overly oppressive task for the shareholder. *Bufferd*, 952 F. 2d at 678. . . . Finally, we reject any suggestion that we elevate the 'perceived unfairness to taxpayers' over our duty to strictly construe in favor of the government a statute of limitation when the petitioner seeks application of the statute so as to bar the rights of the government. *Fehlhaber*, 954 F. 2d at 658." *Id.*, at 789.[11]

---

Commissioner. See *Leonhart* v. *Commissioner*, 27 TCM 443 (1968), ¶ 68,098 P–H Memo TC, aff'd on other grounds, 414 F. 2d 749 (CA4 1969).

[11] Petitioner additionally asserts that the returns of shareholders of a Subchapter C corporation cannot be adjusted after the limitations period has run for assessing the corporation's return, and that therefore S corporation shareholders are entitled to identical treatment. Brief for Petitioner 11–12, 21–22. However, petitioner has not provided a single authority in support of the premise of this assertion. At oral argument, the Commissioner maintained that the opposite is the case, see Tr. of Oral Arg. 27–28, relying mainly on *Commissioner* v. *Munter*, 331 U. S. 210 (1947), which, without addressing the limitations issue, allowed an adjustment of shareholders' 1940 taxes based upon the Commissioner's finding that, at the time of its creation by merger in 1928, the corporation had acquired the accumulated earnings and profits of its predecessor corpora-

## III

As found by the courts below, the plain language of § 6501(a) supports the Commissioner. The statutory evidence and policy considerations proffered by petitioner offer no basis for questioning this conclusion. We hold that the limitations period within which the Internal Revenue Service must assess the income tax liability of an S corporation shareholder runs from the date on which the shareholder's return is filed. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

tions. A recent Tax Court decision also provides indirect support for the Commissioner's view:

"We have held that the relevant return for determining whether, at the time a deficiency notice was issued, the period for assessment had expired under section 6501(a) 'is that of petitioner against whom respondent has determined a deficiency.' [Citing *Fehlhaber*, 94 T. C., at 868.] We have maintained that position consistently, without regard to the nature of the source entity involved. See [cases involving partnerships, trusts, and S corporations]." *Lardas* v. *Commissioner*, 99 T. C. 490, 493 (1992).

In any event, it is doubtful that petitioner's conclusion follows from his premise, for the taxation of C corporations and their stockholders is so markedly different from that of S corporations.