RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHN J. MACHACEK, JR.; MARIANNE MACHACEK,
                    *Petitioners-Appellants*,

                                          No. 17-1131

    *v.*

COMMISSIONER OF INTERNAL REVENUE,
                    *Respondent-Appellee*.

───────────────

Appeal from the United States Tax Court.
No. 12701-11—David Laro, Judge.

Argued:  December 5, 2017

Decided and Filed:  October 12, 2018

Before:  BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Howard L. Richshafer, WOOD & LAMPING LLP, Cincinnati, Ohio, for Appellants.  Regina S. Moriarty, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Howard L. Richshafer, Jeffrey R. Teeters, WOOD & LAMPING LLP, Cincinnati, Ohio, for Appellants.  Regina S. Moriarty, Michael J. Haungs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

## OPINION

───────────────

    HELENE N. WHITE, Circuit Judge.  Petitioners-appellants John J. Machacek, Jr. (John Machacek) and Marianne Machacek (together, the Machaceks), a married couple, were the sole shareholders of John J. Machacek, Jr., Inc. (Machacek, Inc.), a corporation organized under Subchapter S of the Internal Revenue Code (an S corporation).  John Machacek was also an

employee of Machacek, Inc.  The Machaceks appeal the Tax Court's ruling requiring them to treat as income the economic benefits resulting from Machacek, Inc.'s payment of a premium on John Machacek's life insurance policy under a compensatory split-dollar arrangement.  Relying on the compensatory nature of the arrangement, the Tax Court rejected the Machaceks' argument that the economic benefits should be treated as a shareholder distribution.

Because the Tax Court did not consider the impact of a provision of the tax regulations specifically requiring that such economic benefits be treated as shareholder distributions, we reverse the Tax Court's decision and remand for further proceedings consistent with this opinion.

## I.  Background

In 2002, Machacek, Inc. adopted the Sterling Benefit Plan in order to provide certain benefits to its employees.  Pursuant to the plan, Machacek, Inc. provided John Machacek with a life insurance policy and paid the $100,000 annual premium in the 2005 tax year; both Machacek, Inc. and the Machaceks filed timely tax returns for that year.  Because Machacek, Inc. is an S corporation, its income, losses, deductions, and credits are "passed through" to shareholders for tax purposes.  Machacek Inc. deducted the $100,000 premium, and that amount was thus not included in the Machaceks' individual income.  The Machaceks also did not include as individual income the economic benefits flowing from the increase in value of the life insurance policy.

The Tax Court determined that Machacek, Inc. was not entitled to deduct the $100,000 premium payment.  Because the $100,000 premium payment was not deductible, Machacek, Inc. underreported its income for that year and, due to the pass-through nature of S corporations, the increased income was passed through to the Machaceks, who were then required to pay income tax on that amount.  The non-deductibility of the premium payment is not disputed, and the Machaceks concede that they must report the amount of the premium payment as pass-through income.

The dispute here concerns the tax treatment of the economic benefits flowing to John Machacek as a result of Machacek, Inc.'s payment of the premium.  The parties dispute whether the Machaceks are required to report as taxable income—in addition to the pass-through amount

of the premium—the economic benefits flowing from the increase in value of the life insurance policy caused by the payment of the premium.[1]

The Tax Court ruled against the Machaceks and found that they were required to account for the economic benefits in their individual income:

> Machacek, Inc.'s deduction, when disallowed in 2005, increased the S corporation's gross income, which additional income was then passed on to petitioners as the shareholders of Machacek, Inc. However, Mr. Machacek, in addition to being a shareholder of the corporation, was also one of its employees. And in 2006, when the previously unreported and untaxed portion of the accumulation value of his policy was determined, the value of the $100,000 contribution by Machacek, Inc., was properly attributed to Mr. Machacek as an employee of the S corporation and a non-owner of the life insurance contract. While this result may seem aberrational in view of the pass-through treatment generally afforded to S corporations, it is a result mandated by the split-dollar life insurance regulations . . . . In instances other than those governed by the split-dollar life insurance regulations, the general rule of the non-taxability of previously taxed S corporation income is unperturbed.

(R. 73 at 6.)

## II. Discussion

This dispute turns on the interplay of the split-dollar life insurance regulations and Subchapter S.

### A. Subchapter S

The Machaceks rely on the statutory provisions governing the tax treatment of S corporations, arguing that such statutes "prevent double taxation otherwise imposed pursuant to an interpretative regulation addressing split dollar life insurance premiums that have been paid by S corporations." (Appellants' Br. at 3.)

Subtitle A, chapter 1, subchapter S of the Internal Revenue Code establishes the legal framework governing S corporations. *See* 26 U.S.C. § 1361 *et seq*. S corporations are generally exempt from corporate income tax. 26 U.S.C. § 1363(a). Instead, an S corporation's income,

---

[1]The value of economic benefits provided by a split-dollar arrangement is calculated in the manner set out in 26 C.F.R. § 1.61-22(d)(2). We do not reach the issue of valuation.

losses, deductions, and credits are passed through to its shareholders. *See Maloof v. Comm'r*, 456 F.3d 645, 647 (6th Cir. 2006) (citing 26 U.S.C. § 1366(a)(1).) Each shareholder in an S corporation "pays taxes at individual rates on the pro rata share of the corporation's income (if there is any) and receives the pro rata tax benefits (*e.g.*, losses, deductions and credits) of the corporation." *Id.* As a result, "the S corporation's income and losses become the individual shareholder's income and losses." *Id.* (citing *Bufferd v. Comm'r*, 506 U.S. 523, 525 (1993)).

The tax treatment of distributions of property by a corporation to its shareholders is generally governed by 26 U.S.C. § 301(c). However, Subchapter S provides its own rules for the treatment of a "distribution of property made by an S corporation with respect to its stock to which (but for this subsection) section 301(c) would apply." 26 U.S.C. § 1368(a).

## B. Split-Dollar Life Insurance Regulations

The tax treatment of split-dollar life insurance arrangements is set out by regulation. *See* 26 C.F.R. § 1.61-22. Tax regulations "are entitled to great weight and are to be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Brooks v. United States*, 473 F.2d 829, 832 (6th Cir. 1973) (citing *Bingler v. Johnson*, 394 U.S. 741, 750 (1969); *Comm'r v. S. Tex. Lumber Co.*, 333 U.S. 496, 501 (1948)).

The regulations define a split-dollar life insurance arrangement as:

any arrangement between an owner and a non-owner of a life insurance contract that satisfies the following criteria—

> (i) Either party to the arrangement pays, directly or indirectly, all or any portion of the premiums on the life insurance contract, including a payment by means of a loan to the other party that is secured by the life insurance contract;

> (ii) At least one of the parties to the arrangement paying premiums . . . is entitled to recover (either conditionally or unconditionally) all or any portion of those premiums and such recovery is to be made from, or is secured by, the proceeds of the life insurance contract; and

> (iii) The arrangement is not part of a group-term life insurance plan . . . unless the group-term life insurance plan provides permanent benefits to employees . . . .

26 C.F.R. § 1.61-22(b)(1).  Arrangements satisfying the criteria set out by § 1.61-22(b)(1) are generally referred to as "traditional" split-dollar arrangements.  It is undisputed that John Machacek's life insurance policy does not qualify as a traditional split-dollar arrangement.

However, the split-dollar regulations also apply to any arrangement qualifying either as a "compensatory" arrangement or a "shareholder" arrangement, regardless whether those arrangements satisfy the criteria for a traditional arrangement.  *See* 26 C.F.R. § 1.61-22(b)(2).

> An arrangement qualifies as a "compensatory" arrangement if:
>
> (A) The arrangement is entered into in connection with the performance of services and is not part of a group-term life insurance plan . . . ;
>
> (B) The employer or service recipient pays, directly or indirectly, all or any portion of the premiums; and
>
> (C) Either—
>
> > (1) The beneficiary of all or any portion of the death benefit is designated by the employee or service provider or is any person whom the employee or service provider would reasonably be expected to designate as the beneficiary; or
> >
> > (2) The employee or service provider has any interest in the policy cash value of the life insurance contract.

26 C.F.R. § 1.61-22(b)(2)(ii).  The Tax Court found that John Machacek's life insurance policy qualifies as a compensatory split-dollar arrangement.

> An arrangement qualifies as a "shareholder" arrangement if:
>
> (A) The arrangement is entered into between a corporation and another person in that person's capacity as a shareholder in the corporation;
>
> (B) The corporation pays, directly or indirectly, all or any portion of the premiums; and
>
> (C) Either—
>
> > (1) The beneficiary of all or any portion of the death benefit is designated by the shareholder or is any person whom the shareholder would reasonably be expected to designate as the beneficiary; or
> >
> > (2) The shareholder has any interest in the policy cash value of the life insurance contract.

26 C.F.R. § 1.61-22(b)(2)(iii). The parties appear to concede that John Machacek's life insurance policy is not a shareholder arrangement.

The split-dollar life insurance regulations apply "to any split-dollar life insurance arrangement," regardless whether the arrangement is a traditional, compensatory, or shareholder arrangement.[2] *See* 26 C.F.R. § 1.61-22(j)(1)(i). When an arrangement is governed by the split-dollar life insurance regulations, the non-owner of the policy "must take into account the full value of all economic benefits."[3] 26 C.F.R. § 1.61-22(d)(1). However, "[d]epending on the relationship between the owner and the non-owner, the economic benefits may constitute a payment of compensation, a distribution under section 301, a contribution to capital, a gift, or a transfer having a different tax character." *Id.* The split-dollar regulations make no reference to Subchapter S.

However, 26 C.F.R. § 1.301-1—the regulation purporting to govern the distribution of property by any corporation to its shareholders with respect to their stock—addresses the treatment of economic benefits flowing from split-dollar life insurance arrangements. Section 1.301-1(q)(1)(i) states that "the provision by a corporation to its shareholder pursuant to a split-dollar life insurance arrangement, as defined in § 1.61-22(b)(1) or (2), of economic benefits described in § 1.61-22(d) . . . is treated as a distribution of property." 26 C.F.R. § 1.301-1(q)(1)(i). By its terms, this regulation applies to all three types of split-dollar arrangements: traditional arrangements defined by § 1.61-22(b)(1); compensatory arrangements defined by § 1.61-22(b)(2)(ii); and shareholder arrangements defined by § 1.61-22(b)(2)(iii).

There is minimal case law concerning the interplay of Subchapter S and the split-dollar regulations, and we are aware of no case dealing with the issue presented here. Thus, the application of 26 C.F.R. § 1.301-1(q)(1)(i) to economic benefits provided to shareholder-employees pursuant to a compensatory arrangement appears to be an issue of first impression.

---

[2]The split-dollar regulations apply only to arrangements that were entered into, or materially modified, after September 17, 2003. *See* 26 C.F.R. § 1.61-22(j)(1)(i). It is undisputed on appeal that John Machacek's life insurance policy satisfies this temporal requirement.

[3]This appeal concerns split-dollar arrangements in which an employer both owns the policy and pays the premium. Because such arrangements provide a benefit to the non-owner, they are taxed according to the "economic benefit regime" described herein. In situations where the policy is owned by the *employee*, the arrangement is covered by the "loan regime." *See* 26 C.F.R. § 1.7872-15. The loan regime is not at issue here.

**C. The Machaceks' Argument**

The thrust of the Machaceks' argument is that the economic benefits should be treated as a distribution of property by an S corporation to its shareholder. The Machaceks' argument appears to proceed in four main steps, although their briefs do not present these steps in clear succession.

At the first step, the Machaceks argue that notwithstanding that the economic benefits here flowed from a compensatory split-dollar arrangement, the regulations require that the economic benefits "be treated as a 'distribution of property' from the corporate-owner (Machacek, Inc.) to the non-owner (Mr. Machacek)." (Appellants' Br. at 17.) This step of the argument relies on 26 C.F.R. § 1.301-1(q)(1)(i), which states that the provision of economic benefits "by a corporation to its shareholder pursuant to a split-dollar life insurance arrangement . . . is treated as a distribution of property." Neither the Machaceks nor the Commissioner addressed this regulation before the Tax Court, and the Tax Court made no mention of this regulation.

At the second step, the Machaceks point to the fact that "distributions of property" to a shareholder are ordinarily governed by 26 U.S.C. § 301(c). *See* 26 U.S.C. § 301(a) ("[A] distribution of property . . . made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in [§301(c)].").

At the third step, the Machaceks argue that Subchapter S—rather than § 301(c)—governs the treatment of the distribution here because Machacek, Inc. is an S corporation. *See* 26 U.S.C. § 1368(a) ("distribution of property made by an S corporation with respect to its stock to which (but for this subsection) section 301(c) would apply shall be treated in the manner provided" by Subchapter S).

At the fourth step, the Machaceks argue that Subchapter S mandates that any shareholder distribution "taxable under the Subchapter S provisions . . . would escape taxation under the split-dollar regulations." (Appellants' Br. at 17.)

The Machaceks also state that the "split-dollar regulations are interpretative rather than legislative" and argue that the regulations "do not carry sufficient weight to overcome Congress' unambiguous standards expressed in S corporation statutes." (Appellants' Br. at 14.)  In their reply brief, the Machaceks again state that "the Subchapter S provisions relating to avoiding the double taxation of dividends override and control the split-dollar regulations." (Reply at 2.) Although the Machaceks appear to argue that statutes must trump regulations, they do not pursue this argument any further.  In fact, the linchpin of their argument is that 26 C.F.R. § 1.301-1(q)(1)—a regulation—requires that the economic benefits be treated as distributions of property.

## D. The Commissioner's Argument

The Tax Court concluded, and the Commissioner now argues, that the economic benefits should be treated as individual income—rather than as a shareholder distribution—because John Machacek received life insurance as part of a *compensatory* split-dollar arrangement.  The Commissioner correctly notes that such treatment would be uncontroversial if the recipient of the economic benefits were an ordinary employee, rather than an S corporation's shareholder-employee.  The distinction between John Machacek's different roles—employee and shareholder—is therefore key to the Commissioner's position.

In response to the Machaceks' reliance on § 1.301-1(q)(1)(i), the Commissioner points only to the distinction between compensatory and shareholder arrangements.  The Commissioner recognizes that § 1.301-1(q)(1)(i) applies to both compensatory and shareholder arrangements but concludes that it "does not mean that in any situation where a compensatory arrangement covers a shareholder, the taxpayer's status as a shareholder trumps his status as an employee, causing the economic benefit to be treated as a distribution to a shareholder," because "[s]uch an interpretation of the regulation would make no sense, as it would defeat the reason for distinguishing between a compensatory arrangement and a shareholder arrangement." (Appellee's Br. at 37.)  The Commissioner does not set out what it sees to be "the reason for distinguishing between a compensatory arrangement and a shareholder arrangement," and it is not clear that treating all economic benefits to shareholders as distributions would undermine the purpose of the regulations.  The structure of the split-dollar regulations implies that the

regulations were intended to broaden the scope of the term. Indeed, commentators at the time the regulations were passed recognized that split-dollar arrangements were defined "so broad[ly] that arrangements not previously considered split-dollar may well be swept within its scope." Margaret Gallagher Thompson, *The Final Split-Dollar Regulations: The IRS Offers Up a Complex Array of Rules*, Journal of Accountancy (Feb. 1, 2004), https://www.journalofaccountacy.com/issues/2004/feb/thefinalsplitdollarregulations.html. Further, the split-dollar regulations apply to all situations, not just situations where the non-owner of the policy is a shareholder, and thus there are obvious reasons for distinguishing between shareholder and compensatory arrangements.

Finally, the Commissioner notes that "Machacek, Inc. will be entitled to a deduction in a future tax year," pursuant to 26 C.F.R. § 1.83-6(a)(5), "when it actually transfers ownership of the policy to John Machacek." (Appellee's Br. at 41; *see also id.* at 26.) The Commissioner appears to rely on a possible future deduction as a way to counter the Tax Court's acknowledgement that the result below "may seem aberrational." The Commissioner argues that "it is [the Machaceks], not the Commissioner, who are arguing for an inequitable result under which they would escape taxation on the accumulation value of the policy, and realize an additional tax advantage when their corporation deducts the cost of the policy in the future." (Appellee's Br. at 41.) However, the Machaceks will also have personal tax consequences when the policy is transferred.

## E. 26 C.F.R. § 1.301-1(q)(1)(i) Is Dispositive

In finding for the Commissioner, the Tax Court did not address 26 C.F.R. § 1.301-1(q)(1)(i). Neither party cited or relied on this regulation below, and we are aware of no case discussing the regulation in any context. But given its importance in this scenario, we cannot simply ignore it. If the economic benefits to John Machacek are properly treated as a distribution of property to a shareholder—rather than as compensation to an employee—then the Tax Court erred.

Section 1.301-1(q)(1)(i) is dispositive and renders irrelevant whether John Machacek received the economic benefits through a compensatory or shareholder split-dollar arrangement.

Section 1.301-1(q)(1)(i) treats economic benefits provided to a shareholder pursuant to *any* split-dollar arrangement as a distribution of property within the ambit of § 301. And, although another sub-section of that regulation, 26 C.F.R. § 1.301-1(c), states that the regulation as a whole "is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such," the explicit inclusion in § 1.301-1(q)(1)(i) of all arrangements described in § 1.61-22(b)(2)—which includes compensatory arrangements—makes clear that when a shareholder-employee receives economic benefits pursuant to a compensatory split-dollar arrangement, those benefits are treated as a distribution of property and are thus deemed to have been paid to the shareholder in his capacity as a shareholder. The Commissioner offers no alternative interpretation that gives meaning to the inclusion of compensatory arrangements in § 1.301-1(q)(1)(i). Our interpretation is further supported by the fact that § 1.61-22(d) states that the tax treatment of the economic benefits depends on the "relationship between the owner and the non-owner." The Commissioner argues that this language shows that the tax treatment depends on the nature of the split-dollar arrangement—compensatory or shareholder—but if that were the controlling factor, the regulation could have said so. It does not.

The Tax Court erred by relying on the compensatory nature of John Machacek's split-dollar arrangement to conclude that the economic benefits were not distributions of property to a shareholder. Where, as here, a shareholder receives economic benefits from a split-dollar arrangement, § 1.301-1(q)(1)(i) requires that those benefits be treated as a distribution of property to a shareholder.

### III. Conclusion

For the reasons set out above, we reverse the Tax Court's decision with respect to the tax treatment of the economic benefits flowing to the Machaceks from Machacek, Inc.'s payment of the $100,000 premium on John Machacek's life insurance policy and hold, pursuant to § 1.301-1(q)(1)(i), that those economic benefits must be treated as distributions of property by a corporation to its shareholder. We remand for further proceedings consistent with this opinion.